IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER LEGG, PAGE LOZANO, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 14 C 10043 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| PTZ INSURANCE AGENCY, LTD., and PETHEALTH, INC., | )<br>) |
| Defendants. | ) |

# **MEMORANDUM OPINION AND ORDER**

Plaintiffs Christopher Legg and Page Lozano, individually and on behalf of all others similarly situated, have brought an amended putative class action complaint against defendant PTZ Insurance Agency, Ltd. and its parent company, Pethealth, Inc. ("Pethealth") alleging that defendants violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 et seq., by calling their cellular telephones using an automated dialing system, or "robocall," without their express written consent. Pethealth has moved for summary judgment, arguing that the undisputed facts demonstrate that it did not initiate the calls in question and cannot be held vicariously liable for the entity that did. For the reasons described below, Pethealth's motion is denied.

# **BACKGROUND**[1]

Pethealth is a holding company with numerous subsidiaries under what can be described as the Pethealth umbrella. Pethealth's 2013 Annual Report indicates that it consolidated its

---

[1]Unless otherwise noted, the background facts are taken from the parties' L.R. 56.1 Statements.

subsidiaries stating its "[s]ubsidiaries are all entities over which the Company has the power to control the financial and operating policies," and that its "[s]ubsidiaries are fully consolidated from the date on which control is obtained by the Company and will continue to be consolidated until control ceases." All of Pethealth's subsidiaries are wholly owned.

Pethealth, through its subsidiaries, offers consumers various services related to pet adoption and pet health insurance. One such service offered by defendant PTZ in conjunction with pet adoptions is an initial 30-day free gift of pet health insurance. PTZ markets and sells pet health insurance to United States consumers. As part of its business operations it offers a 30-day free gift under a registered assumed name "24 PetWatch." The 30-day free gift is actually offered to pet adopters at what Pethealth describes as PTZ's partner animal shelters. The partner animal shelters contract with an entity called Pethealth Software Solutions, Inc. for software to use for providing the insurance. The insurance is generally offered to adopters of pets that have had a microchip implanted for safety. To remind pet-adopters to activate their free gift of insurance, PTZ makes pre-recorded phone calls to them. The first call is made within two days after the adoption. The second, and what is supposed to be the final call, is made four days later. The calls are made using contact information provided by the adopter to the animal shelter at the time of adoption.

Plaintiff Legg adopted a kitten from the Florida Human Society on November 8, 2014. As part of the adoption process a microchip was placed in the kitten and registered with 24 PetWatch. Legg claims that he subsequently received three phone calls on his cellular phone from No. 877-291-1524 which is listed in 24 PetWatch's promotional materials. The recorded message indicated that it was from "Playful PetWatch Pet Insurance" to remind Legg of his free

2

gift.  Plaintiff Legg claims that he did not give PTZ or any other related company permission to call his cellular phone and that his cell number is listed on the National Do Not Call Directory.

On August 5, 2014, plaintiff Lozano adopted a pet from "Animal Care Services." Lozano subsequently received "several" pre-recorded calls soliciting her to activate the pet insurance.  Lozano did not give consent for those calls and her number is also listed on the National Do Not Call Directory.

## **DISCUSSION**

Pethealth has moved for summary judgment.  Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.(e); Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1980).  The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the non-moving party.  Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The non-moving party must, however, "do more than simply show there is some metaphysical doubt as to the material facts."  Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

The TCPA requires prior written express consent before any auto dialed or pre-recorded telemarketing call may be made to a cellular telephone number. See In re Rules and Regulations Interpreting the Telephone Consumer Protection Act of 1991, 27 F.C.C.R. 1830, 1831 (2012). In its motion, Pethealth does not dispute that plaintiffs received auto dialed pre-recorded messages from PTZ on their cellular phones, but argues that the facts demonstrate that it cannot be held liable for those calls.

Liability for unlawful telemarketing calls under the TCPA can be either direct or vicarious. See In re Joint Petition Filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2012). "Direct liability under the TCPA applies only to entities that 'initiate' the telemarketing call." Smith v. State Farm Mutual Auto. Ins. Co., 30 F.Supp.3d 765, 771 (N.D. Ill. 2014) (citing Dish Network, 28 F.C.C.R. at 6582, ¶ 24). "A seller is not directly liable for a TCPA violation unless it initiates the call." Id. A person or entity initiates a call when "it takes the steps necessary to physically place a telephone call." Id. Under this definition, a seller generally does not initiate calls placed by third-party telemarketers. Id. (Citing Dish Network, 28 F.C.C.R. at 6593, ¶ 48. The seller may, however, be held vicariously liable under federal common law principles of agency, including formal agency, apparent authority, and ratification. Dish Network, 28 F.C.C.R. 6584, ¶ 28.

In the instant case, it appears from the documents presented that the calls in question are actually placed by a subsidiary of Pethealth named PTZ Brokers on behalf of PTZ Agency. Thus, Pethealth argues that it cannot be held directly liable for the calls. Plaintiff counters that even if Pethealth did not physically place the calls it can be held directly liable because it controls everything that PTZ Agency and PTZ Brokers do. As noted in Dish Network, 28

4

F.C.C.R. at 6583, ¶ 27, "[o]ne can image the circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example."

In In re Dialing Services, LLC, 29 F.C.C.R. 5537, 5543-44, ¶ 17 (2014), the FCC identified certain evidence that demonstrates a connection between a person or entity and the making (or initiating) of a call: (1) the developer of the software and provider of the dialing platform, including the underlying hardware, software, web interface, and connectivity to the phone network; (2) leasing or otherwise securing telephone connections for making robocalls; (3) purchasing voter (or caller) lists; (4) providing technical support; (5) reviewing or editing messages; (6) revealing phone numbers to determine if they are valid; (7) transmitting the caller's number to be displayed on the recipient's call identification; (8) storing the pre-recorded messages; (9) playing a recorded message to a called party; (10) detecting whether a call is answered by a live person or an answering machine; (11) providing reports of calls; and (12) dialing telephone numbers.

In the instant case, plaintiff has presented evidence from which a reasonable juror could conclude that Pethealth "was so involved in the placing" of the robocalls as to be directly liable. Just as examples, the documents in the record indicate that pet adopters sign a consent form to be contacted by "Pethealth, Inc." and provide their contact information to "Pethealth, Inc." The record also demonstrates that such adopters received emails from Pethealth, Inc. From these documents, a jury could reasonably conclude that Pethealth, Inc. provides caller information to PTZ Brokers.

In addition, PTZ Brokers uses equipment and special telephone services provided by Allstream, Inc., to facilitate the robocalling process. The contract with Allstream lists, at the top, Pethealth Services, Inc. as the customer, but the customer listed on the signature is Pethealth, Inc. Glen Tennison, Chief Financial Officer of Pethealth, Inc. signed the contract. From this a jury could conclude that Pethealth, Inc. provided the means to PTZ Brokers to make the calls on behalf of PTZ Agency. At the very least it is evidence that Pethealth, Inc. disregarded corporate formalities. Indeed, the evidence suggests that Pethealth and its wholly owned subsidiaries share a number of officers, directors, employees and offices.

Although this evidence is not as compelling and certainly does not establish that summary judgment should be granted to plaintiffs as they suggest in their brief, it does present a genuine issue of material fact as to whether Pethealth was directly involved in the calls placed to plaintiffs. Consequently, Pethealth's motion for summary judgment is denied.[2]

## **CONCLUSION**

For the reasons described above, defendant Pethealth, Inc.'s motion for summary judgment (Doc. 128) is denied.

**ENTER:** September 14, 2016

‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎_____
**Robert W. Gettleman
United States District Judge**

---

[2] Because the court concludes that plaintiffs have raised a genuine dispute as to Pethealth's direct liability, it need not reach the issue of vicarious liability.