IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LEGG and PAGE LOZANO, individually and on behalf of all other similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 14 C 10043 |
| v. | ) ) | Judge Robert W. Gettleman |
| PTZ INSURANCE AGENCY, LTD., an Illinois corporation, and PETHEALTH, INC., a Canadian corporation, and FAIRFAX FINANCIAL HOLDINGS, LTD., a Canadian corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Christopher Legg and Page Lozano have brought a three count second amended putative class action complaint against defendants PTZ Insurance Agency, Ltd., Pethealth Inc. and Fairfax Financial Holdings, Ltd.,[1] alleging that defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) by: (1) placing unsolicited "advertising robocalls" to plaintiffs' cellular phones; (2) placing unsolicited telemarketing calls to plaintiffs' cellular phones;[2] and (3) placing robocalls to plaintiffs' cellular phones. Defendants have moved (Doc. 247) to strike the class allegations in the second amended complaint, and plaintiffs have cross-moved (Doc. 252) to certify a class. For the reasons described below, defendants' motion is granted and plaintiffs' motion is denied.

---

[1]Defendants PTZ and Pethealth have moved to drop Fairfax as a defendant as improperly added in the second amended complaint. That motion will be addressed separately.

[2]The court has already held that the calls in question are not telemarketing as defined by the TCPA (Doc. 223).

## BACKGROUND

Defendant Pethealth Inc. ("Pethealth") is a holding company with numerous subsidiaries under what can be described as the Pethealth umbrella. Pethealth, through its subsidiaries, offers consumers various services related to pet adoption and pet insurance. Once such service offered by defendant PTZ in conjunction with pet adoptions is an initial 30-day free gift of pet health insurance. The 30-day free gift is actually offered to pet adopters at PTZ's partner animal shelters, generally to those adopters of pets that have a microchip implanted for safety. The shelters used software provided by defendants to gather information from adopters during the adoption process for the purpose of providing the 30-day free gift. To receive the free gift, the adopter must provide a valid email address and "opt-in" to receiving communications from defendants via email.

During the adoption process, the adopters fill out paper work providing the shelter with their name, address, email address and telephone numbers. The paperwork provides that unless they opt-out they may be sent information and special offers by mail or email regarding products or services that may be of interest, and that their personal information may be shared with third parties so those third parties may "contact you by mail or email for their own marketing purposes."

Adopters are sent at least two emails reminding them of the 30-day free gift. In addition, adopters also receive what plaintiff describes as two pre-recorded robocalls. The first call (the "Day 2 call") provides:

> Hi from the 24 PetWatch Insurance team. This is a friendly reminder to please confirm your 30-day gift of insurance if you haven't done so already. Its easy, check your inbox for the 24 *PetWatch email*, click on the link, and confirm your gift. If you have already confirmed, press 1 now to speak to a representative to

extend your gift for [] days at absolutely no cost to you. Have a great day and congratulations on adopting your new best friend.

The second call (the "Day 6 call"): provides:

Hello – we're calling from 24 PetWatch Pet Insurance to remind you that when you adopted your pet, you were given a 30 day Gift of Insurance, and you only have [] day [] to activate it. Protect your pet from the unexpected and press 1 now to activate it or call 1-877-291-1524.

The calls are made using contact information provided by the adopters to the animal shelters at the time of the adoption process.

## **DISCUSSION**

Congress enacted the TCPA in 1991 to address telephone marketing calls and certain telemarketing practices that Congress found to be an invasion of consumer privacy. Section 227(b) of the Act proscribes the use of an automated telephone dialing system or prerecorded voice calsl to any telephone number assigned to a cellular telephone absent prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). After October 16, 2013, the FCC, the agency vested with authority to issue regulations implementing the TCPA, has required express signed written consent to place advertising calls to cellular phones. See In re Rules and Regulations Implementing the TCPA of 1991, 27 F.C.C.R. 18301831 (2012). Advertising is defined as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

Class action suits are governed by Fed. R. Civ. P. 23. Under Rule 23(c)(1)(A), the court should determine whether to certify an action as a class action "at any early practicable time." Motions to strike class allegations are analyzed under Rule 23, not Rule 12(f). See Buonomo v. Optimum Outcomes, Inc., 301 F.R.D. 292, 295 (N.D. Ill. 2014). The standard for evaluating

whether class allegations should be stricken is the same as for class certification, and the burden is on the plaintiff to demonstrate that class certification is appropriate. Valentine v. WideOpen West Finance, LLC, 288 F.R.D. 407, 414 (N.D. Ill. 2012).

The determination of whether class certification is appropriate requires a two step analysis. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.3d 697, 703 (7th Cir. 1993). These requirements are prerequisites to certification, and failure to meet any one of them precludes certification of the class. Parker v. Risk Mgmt. Alternatives, Inc. 206 F.R.D. 211, 212 (N.D. Ill 2002). In addition, plaintiffs must satisfy one of the conditions of Rule 23(b). In the instant case, plaintiffs rely on Rule 23(b)(3), which requires them to demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs propose certification of two classes. The first, the "advertisement class" is defined as:

> (1) all persons in the United States (2) who defendants or some person on defendants' behalf (3) called their cell phone using an artificial or prerecorded voice message to play defendants' Day 2 or Day 6 message (4) where the person did not provide signed express written consent to receive automated prerecorded calls (5) in the period between October 16, 2013 to the present.

4

The second, or so-called robocall class, is defined as:

(1) all persons in the United States (2) who defendants or some person on defendants' behalf (3) called on their cell phone using an artificial or prerecorded voice message to play defendants' Day 2 of Day 6 message (4) where the recipient did not give prior express consent to defendants to receive automated calls (5) in the period between October 16, 2013 to the present.

**Rule 23(a) Requirements**

    **1.    Numerosity**

Under Rule 23(a)(1) plaintiffs must show that the class is so numerous that joinder of all members is impracticable. The exact number of class members need not be shown, but impracticability of joinder must. Parker, 206 F.R.D. at 212. In the instant case, discovery has revealed that the prerecorded messages were sent to at least 341,288 unique cellular telephone numbers. This is a sufficiently large number to demonstrate impracticability of joinder, and defendants have not challenged the numerosity requirement.

    **2.    Commonality**

Rule 23(a)(2) required the presence of questions of law or fact common to the class. The Rule does not mandate absolute commonality; a common nucleus of operative facts is usually sufficient to satisfy the requirement. Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998).

In the instant case, each potential class member received the same prerecorded calls. Thus, at least with respect to the specifics of the call and how defendants received the class members' telephone numbers, the case presents common questions of fact. Additionally, whether defendants' calls violate the TCPA, and whether they constitute advertising are common questions of law. Thus, plaintiffs have established the commonality requirement of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires plaintiffs to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality is closely related to commonality. Keele, 149 F.3d at 595. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." Id.

In the instant case, each class member's claim arises from defendants' use of prerecorded phone calls to their cellular phones. The claims are all based on the same set of facts and legal theories. Consequently, plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### 4. Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to demonstrate that the representative parties will fairly and adequately protect the interests of the class. The requirement has three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to insure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously. Kort v. Diversified Collection Services, 2001 WL 1617213 *3 (N.D. Ill. Dec. 17, 2001). Defendants have not challenged the adequacy of representation, and the court concludes that plaintiffs have established this requirement.

### Rule 23(b)(3)

Under Rule 23(b)(3) the questions of law or fact common to the class must "predominate over any questions affecting only individual members," and a class action must be superior to

other available methods for the fair and efficient adjudication of the controversy. It is the establishment of this condition that defendants challenge and where plaintiffs' class certification petition runs into trouble.

Predominance under Rule 23(b)(3) is similar to the commonality requirement of Rule 23(a)(2), but requires a "far more demanding" inquiry. Amchen Products, Inc. v. Windsor, 521 U.S. 591, 624 (1997). There is no mathematical or mechanical test for evaluating predominance, but the "'inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy' with the purpose being to determine whether a proposed class is 'sufficiently coesive to warrant adjudication by representation.'" Messner v. NorthShore University HealthSystem, 669 F.3d 802, 814 (7th Cir. 2012) (quoting Amchen, 521 U.S. at 623). Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." Id. at 815. If, however, "to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question," and if that question predominates over the common questions, certification should be denied. Id.

In the instant case, defendants argue that individualized questions of consent predominate over any common questions. Plaintiffs counter that the question of whether by giving their cell phone numbers to the shelters constitutes consent to receive calls from defendants about the free gift can be resolved class-wide as a matter of law . That may be true, but defendants have argued more than that. Defendants argue that during the adoption process adopters agree to receive communications from defendants and are told and agree and expect to receive such

7

communications by phone in addition to email. Thus, defendants argue that the question centers around what happens during each individual adoption process.

To avoid these individual issues, plaintiff argues that the calls in question are "advertising," which requires express written consent of the recipient pursuant to FTC rules. See 27 F.C.C.R. 18301831. They thus argue that certification of the advertising class is proper, because there is no question that none of the proposed class members signed a form specifically agreeing to receive calls on their cellular phones from defendant.

As defendants point out, however, if an adopter has expressly agreed and expected to receive calls from defendant, and did receive those calls, the adopter has not been injured in any way, even if defendants technically violated a procedural requirement of the TCPA. Thus, under Spokeo, Inc. v. Robbins, 136 S.Ct. 1540 (2016), those adopters would not have suffered a concrete injury. True, most courts that have addressed Spokeo's influence on TCPA claims have held that a violation of the TCPA gives rise to a concrete injury. See Wilkes v. CareSource Management Group Co., 2016 WL 7179298 (N.D. Ill. Dec. 9, 2016) (listing cases). The reasoning behind those cases, however, is that the Act "prohibits making certain kinds of telephonic contact with customers without first obtaining their consent. Aranda v. Caribbean Cruise Line, Inc., 2016 WL 4439935, *5-6 (N.D. Ill. Aug. 23, 2016). Thus, receiving the call itself constitutes an injury. Id.

In the instant case, defendants argue that adopters have expressly agreed to receive the calls, that they just did not do so in writing. The lack of a writing does not make the calls unsolicited. If the class members agreed to receive the calls, they lack a "genuine controversy." Messner, 669 F.3d at 814.

Whether issues of individualized consent defeat the predominance requirement in a TCPA case is made on a case-by-case basis after evaluating the specific evidence available to prove consent. See Jamison v. First Credit Servs., Inc., 290 F.R.D. 92, 106-07 (N.D. Ill. 2013) (collecting cases). Generally, when the defendant provides specific evidence showing that a significant percentage of the putative class consented to receiving calls, issues of individualized consent predominate.[3] Id. If, however, "the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification." Id.

In the instant case, there is nothing vague about defendants' assertions of consent. They have supplied affidavits from a number of adopters who state that they agreed to and expected to receive calls on their cellular phones from defendants about the offered pet insurance. In addition, defendants have submitted affidavits from shelter employees who conducted the adoption processes. Those employees state that after taking the adopters' cell phone numbers, the employees told the adopters to expect to receive "communications" from defendants. Whether such "communications" included cell phone calls as well as e-mail messages would depend on the nature of the conversations between the shelter employees and the adopters, and the adopters' expectations resulting from the conversations. This evidence convinces the court that the trial in this case will be consumed and overwhelmed by testimony from each individual class member, and the shelter employee who assisted that member in the adoption process, to

---

[3]It matters not for the predominance requirement whether the issue of consent is an element of plaintiffs' claim or an affirmative defense. Gene and Gene LLC v. BioPay LLC, 541 F.3d 318, 327 (7th Cir. 2008).

determine whether the class member consented to receive the calls in question. In short, the trial will involve hundreds, if not thousands, of mini-trials on the issue of consent alone. Given the evidence presented by defendants, there is simply no way for plaintiff to establish a lack of consent with generalized evidence. Gene & Gene, LLC, 541 F.3d at 329. Consequently, certification is denied.

## CONCLUSION

For the reasons described above, defendants' motion to strike class allegations (Doc. 247) is granted. Plaintiffs' motion to certify a class (Doc. 252) is denied. This case must proceed on an individual basis. This matter is set for a report on status on August 24, 2017, at 9:00 a.m.

**ENTER:** **August 15, 2017**

_____
**Robert W. Gettleman**
**United States District Judge**