**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER LEGG, individually | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | Case No. 1:14-cv-10043 |
| Plaintiff, | ) | |
| | ) | Judge Robert Gettleman |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| PTZ INSURANCE AGENCY, LTD. | ) | |
| an Illinois Corporation, and | ) | |
| PETHEALTH, INC. | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>CHRISTOPHER LEGG'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.     INTRODUCTION ....................................................................................1

II.    STATEMENT OF THE FACTS ..........................................................2

      A.    Procedural Background ................................................................2

      B.    Discovery ....................................................................................3

      C.    The Parties' Mediation ...............................................................4

      D.    The Proposed Settlement ............................................................4

            1.    The Settlement Class...................................................4

            2.    Monetary Relief for Settlement Class Members .........5

            3.    *Cy Pres* Distributions .................................................6

            4.    Settlement Class Release..............................................6

            5.    Class Representative Service Award ............................7

            6.    Attorneys' Fees and Costs...........................................7

            7.    Administration and Notice ..........................................8

III.    ARGUMENT.......................................................................................9

      A.    The Settlement Approval Process ..............................................9

      B.    The Settlement Resulted From Arm's Length Negotiations And Is Not The Product of Collusion .................................................12

      C.    The Settlement is Within the "Range of Reasonableness" for Preliminary Approval ..............................................................13

            1.    The Settlement Provides Substantial Relief for Settlement Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits ...........................................13

                a.    The Monetary Amount Offered in Settlement .................14

                b.    The Strength of Plaintiff's Case.....................................15

            2.    Continued Litigation is Likely to be Complex, Lengthy, and Expensive...........................................................16

            3.    There is Currently No Opposition to the Settlement ..................17

             4.    Class Counsel Strongly Endorse the Settlement..........................17

            5.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval ...............................18

      D.    Provisional Certification of the Settlement Class is Appropriate ..........18

            1.    The Rule 23(a) Requirements are Satisfied................................18

i

2.     The Rule 23(b)(3) Manageability Requirements are Satisfied ..................................................................... 19

E.     The Proposed Notice Program Is Constitutionally Sound ....................... 20

IV.     CONCLUSION ................................................................................................. 22

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
    No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
    (N.D. Ill. May 5, 2011) ................................................................................................16

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219
    (N.D. Ill. July 26, 2011) ..................................................................................... 10, 11

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................................20

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ................................................................. 9, 10, 11, 14

*Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975) ..........................................9

Connor v. JPMorgan Chase Bank, N.A.
    No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) .........................................15

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ........................................................................................9

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869
    (N.D. Ill. Aug. 20, 2009) ............................................................................................19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ...............................................................................13

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ....................................................................17

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ................................................................................9, 11

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
    Nos. 05 C 5944 & 07 C 2439,
    2007 U.S. Dist. LEXIS 84450
    (N.D. Ill. Nov. 14, 2007) ............................................................................................11

*Kramer v. Autobytel*,
    No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
    (N.D. Cal. Jan. 27, 2012)............................................................................................15

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
    (S.D. Cal. Feb. 5, 2013)...............................................................................................15

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir.
    1987).................................................................................................................................12

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631 (N.D. Ill. 2002) ...............................................................................18

*McKinnie v. JP Morgan Chase Bank, N.A.,*
  678 F. Supp. 2d 806 (E.D. Wis. 2009) ........................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ....................................................................................21

*Murray v. New Cingular Wireless Servs.,*
  232 F.R.D. 295 (N.D. Ill. 2005) .................................................................20

*Parker v. Risk Mgmt. Alternatives, Inc.,*
  206 F.R.D. 211 (N.D. Ill. 2002) .................................................................19

*Phillips Randolph Enters., LLC v. Rice Fields,*
  No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
  (N.D. Ill. Jan. 11, 2007)..............................................................................16

*Redman v. Radioshack Corp.,*
  No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880
  (N.D. Ill. Feb. 7, 2014) ...............................................................................11

*Sadowski v. Med1 Online, LLC,*
  No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766
  (N.D. Ill. May 27, 2008)..............................................................................20

*Schulte v. Fifth Third Bank,*
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .........................................................17

*Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) ................................15

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.,*
  463 F.3d 646 (7th Cir. 2006) ......................................................................13

**Statutes**

Telephone Consumer Protection Act,
  47 U.S.C. § 227(b)(1)(A) ..............................................................................1

**Treatises**

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002).....................9, 10, 12

*Manual for Complex Litig.,*
  at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004) ................................passim

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  <u>INTRODUCTION</u>

Plaintiff Christopher Legg respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiff Legg ("Plaintiff" or "Legg") and Defendants PTZ Insurance Agency, LTD ("PTZ") and Pethealth, Inc. ("Pethealth," jointly as "Defendants").  The proposed Settlement would resolve all claims in the above-entitled action.  Plaintiff alleges that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by placing prerecorded calls to cellular telephones without the prior express consent of Plaintiff and the putative class members.

Under the Settlement Defendants is required to pay $5,500,000 into a settlement fund ("Fund") for a class consisting of approximately 731,173 persons for whom Defendants or their subsidiary called on their cell phone using an artificial or prerecorded voice to play a "Day 2" or "Day 6" message, from October 16, 2013 through November 30, 2016.  Settlement Class Members who file valid claims will receive a pro rata cash payment from this Fund.  Not a single penny of the Fund will revert to Defendants.

This action involves sharply opposing positions on many issues and was not resolved until after years of litigation including after this Court twice denied class certification and while the third motion for class certification was pending.

With this motion, Plaintiff seeks preliminary approval of the Settlement and provisional certification of a nationwide class for purposes of providing the Settlement Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard.  The proposed Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law.

1

## II.    STATEMENT OF THE FACTS

### A.    Procedural Background

On December 15, 2014, Legg filed a Complaint in the United States District Court for the Northern District of Illinois alleging that PTZ and Pethealth violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by making prerecorded calls to cell phones without the prior express consent of Legg or the putative class members.

On September 16, 2015, Plaintiff filed his amended motion for Class Certification under seal. (Dkt 114), which was ultimately denied by this Court on September 21, 2016 after briefing. (Dkt. 223).

While class certification was pending, Pethealth filed a Motion for Summary Judgment on January 8, 2016. (Dkt. 128). On September 14, 2016, the Court denied Pethealth's Motion for Summary Judgment after full briefing (Dkt. 218).

On October 5, 2016, Plaintiff filed a Motion to Reconsider the Court's Order denying class certification (Dkt. 226). On November 21, 2016, the Court denied Plaintiff's Motion for Reconsideration and granted Plaintiff leave to file a Second Amended Complaint (Dkt. 235)

On December 12, 2016, Plaintiff filed his Second Amended Complaint (Dkt. 236.) On January 17, 2017, Defendants answered the Second Amended Complaint, and on January 18, 2017 filed a Motion to Strike the Class Allegations in the Second Amended Complaint (Dkt 247)

On February 10, 2017, Plaintiff filed his Second Amended Motion for Class Certification (Dkt. 252). After briefing, the Court denied Plaintiff's Motion for Class Certification and Granted Defendants' Motion to Strike Class Allegations on August 15, 2017 (Dkt. 287).

On August 31, 2017 Plaintiff filed a Rule 23f Petition for Permission to Appeal with the United States Court of Appeals for the Seventh Circuit (7th Cir. Case No. 17-8018). After

briefing, the Court of Appeals denied Plaintiff's petition on October 10, 2017 (Dkt. 289).

On November 33, 3017, Defendant Fairfax Financial Holdings, LTD filed a motion to dismiss for lack of jurisdiction (Dkt. 293).

On December 22, 2017, Plaintiff filed a Motion for Summary Judgment (Dkt 304). After briefing and extensive motion practice relating to discovery, Plaintiff filed a Motion for leave to file a Third Amended Complaint and to withdraw this pending Motion for Summary Judgment on August 7, 2018 (Dkt 406). On August 15, 2018, the Court Granted Plaintiff's Motion for Summary Judgment against Defendant PTZ, Denied Plaintiff's Motion for Summary Judgment regarding Pethealth, and Granted Plaintiff leave to file a Third Amended Complaint and Third Amended Motion for Class Certification (Dkt 409).

On August 30, 2018, Plaintiff filed his Third Amended Motion for Class Certification. (Dkt 414). Settlement was reached between the parties after the Third Motion for Class Certification was briefed, but before the Court could rule on the Motion.

### B. <u>Discovery</u>

The Parties engaged in extensive discovery and conducted numerous hearings with the focus on discovery.  *See* Dkt. Nos. 45, 51, 65, 78, 87, 88, 90, 101, 102, 103, 107, 108, 109, 110, 116, 117, 118, 119, 173, 181, 368, 403, and 436. In addition, Plaintiff filed motions to compel production of discovery against both Defendants (Dkt. Nos.  76, 162, 314, 322, and 416).

Throughout the discovery process, Counsel held numerous discovery conferences with counsel related to discovery and other issues, as well as with third party counsels.  The discussions were thorough and, at many points, contentious, as the parties addressed all facets of

discovery as well as their respective views on class certification and of Plaintiff's class TCPA claims.[1]

### C. The Parties' Mediation

The parties mediated before the Honorable James Holderman ("Judge Holderman") of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on December 3, 2015, and again on July 18, 2016, as well as follow-up in person meetings and negotiations between Counsel and officers of Defendants before reaching a resolution in principle. Prior to each mediation, the parties submitted detailed mediation briefs to the mediator setting forth their respective views on the strengths of their cases.[2] At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[3]

Counsel exchanged counterproposals on key aspects of the Settlement. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.[4]

### D. The Proposed Settlement

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit 1. (Agreement). For purposes of preliminary approval, the following summarizes the Agreement's terms:

#### 1. The Settlement Class

The Settlement Class is defined as follows:

All persons in the United Sates who were called on their cell phone using an artificial or prerecorded voice to play a "Day 2" or "Day 6" message, from October 16, 2013 through November 30, 2016.

---

[1] *See* Declarations of Keith J. Keogh ("*Keogh Decl.*") attached as Exhibit 2, ¶ 3.
[2] *Id.*
[3] *Id.*
[4] *Id.* ¶ 8.

Agreement § 2.25.[5]  Based on Plaintiff's expert's analysis, the approximate class size is no more than 731,173 persons.  *Exhibit 2* Keogh Decl., ¶ 6.

### 2. Monetary Relief for Settlement Class Members

The Settlement requires Defendants to create a non-reversionary Settlement Fund of $5,500,000.  Agreement §2.30.  Out of this Fund, Settlement Class Members who file a valid claim will receive a Settlement Award in the form of a cash payment.  *Id.* § 2.28.  The amount of each Settlement Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims.  *Id*. §§ 11.  No amount of the Settlement Fund will revert to Defendants.  *Id.*  While it is not possible to predict the precise amount of each Award until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, estimate awards between $92 with a 5% claim rate and $46 at a ten percent [6] claim rate after deductions for Court-approved attorneys' fees and costs, any Court-approved incentive award to the Plaintiff, and costs of notice and claims administration.

Checks for Cash Awards will be valid for 90 days from the date of the check.  *Id.* § 12.1. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least ten dollars ($10.00) to each Settlement Class Member who was not a person who failed to cash his or her initial Settlement Award check, such remaining monies will

---

[5] Excluded the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of this Agreement.  *Id.*

[6] These figures are calculated based on $189,000 in administration and notice costs, Fees in the amount of $1,911,960, which is 36% of settlement fund net administration costs, expenses of $21,000 and an incentive award of $20,000.   As explained below, Plaintiff will separately petition the Court for incentive award and fees and costs as there are no clear sailing provisions in the Settlement Agreement.

be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* §12.2.

In order to exercise the right to obtain the relief outlined above, Settlement Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Settlement Website, by mail or via the Toll-Free Settlement Hotline. *Id.* §10.2.

### 3. *Cy Pres* Distributions

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. Subject to Court approval, the Plaintiff suggests any such funds be sent to the National Consumer Law Center earmarked for working to safeguard the protections of the TCPA. *Id.* §12.3. The class notice will identify this organization.

### 4. Settlement Class Release

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "that were asserted or could have been asserted in the Complaint filed in this action on behalf of Plaintiff and the Settlement Class, including claims for alleged violations of the TCPA, any other federal, law, state law, common law, contract, rule or regulation, or any claim for equitable or injunctive relief whether known or unknown, foreseen or unforeseen, actual or contingent, that arise out of or related to the Day 2 and/or Day 6 Reminder Calls placed between October 16, 2013 to the Present except any release will not cover any dispute or claim relating to any insurance product obtained or purchased" *Id.* § 17.2.

6

### 5. Class Representative Service Award

The Settlement Agreement provides that Plaintiff may petition the Court for a service award. There is no clear sailing provision as to this request. The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id.* In light of the fact that Plaintiff has fully participated in this case including flying to Chicago from Florida for his deposition, Plaintiff will request an incentive award of $20,000.00. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 6. Attorneys' Fees and Costs

Prior to the Final Approval hearing and prior to the objection deadline, Class Counsel will apply to the Court for an award of attorneys' fees and costs. *Id.* §6.1. As will be addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately 36% plus reasonable expenses in common fund TCPA class settlements after settlement administration costs are deducted, particularly in cases involving a non-reversionary common fund of this size. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million.) This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *Id.* Further, the Class

Notice will inform the Settlement Class Members that Class Counsel will seek 36% of the fund net administration costs. As with the incentive award to the class, the Settlement Agreement does not contain a clear sailing agreement as to attorney fees or costs.

### 7. Administration and Notice

All costs of notice and claims administration shall be advanced by Defendants, credited against the Settlement Fund. The Claims Administrator will be Kurtzman Carson Consultants ("KCC"), subject to this Court's approval. *Id*. §2.4. The Claims Administrator shall administer the Settlement, which includes the following duties: (1) issuing Class Notice and claim forms; (2) setting up and maintaining the settlement website and toll-free number; (3) processing claim forms; (4) and issuing settlement payments. *Id*. §§ 10.

Within thirty (30) of the entry of Preliminary Approval Order, the Claims Administrator will issue the Class Notice (Exhibit 2 to the Agreement) via e-mail or mail to all Settlement Class Members in accordance with the Notice Program described in the Settlement Agreement. *Id*. § 10.2. The Notice Program will include a series of reminder e-mail notices and possible mail notice if it is determined that the e-mail notice has not been effective. *Id*.

Further, the Claims Administrator will establish and maintain a Settlement Website. *Id*. § 10.2B. The Settlement Website will provide for online submission of claims and will also include general information such as the Settlement Agreement; Website Notice; the Preliminary Approval Order; Claim Form for anyone wanting to print a hard copy of and mail in the Claim Form; the operative Complaint; the attorney fee motion and any other materials the Parties agree to include. *Id*.

## III.    ARGUMENT

### A.    The Settlement Approval Process

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion"  There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).  The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive

9

expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

10

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval stage. *See, e.g., Am. Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage."); *Kessler v. Am. Resorts International's Holiday Network, Ltd*., Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase.") In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp*., No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014) (citing *Isby*, 75 F.3d at 1199). In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of the Settlement will allow all Settlement Class Members to receive notice of the proposed Settlement's terms and the date and time of the final settlement approval hearing, at which Settlement Class Members may voice approval of or opposition to the Settlement, and at which the parties and Settlement Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632

### B. The Settlement Resulted From Arm's Length Negotiations And Is Not The Product of Collusion

As a leading treatise on class action jurisprudence explains, "decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg*, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-pank" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *Newberg*, §11.42.

As detailed above, the Settlement is the result of years of litigation, two mediations before Judge Holderman (Ret.), additional months of negotiations, and extensive, arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class actions. Thus, Counsel for both parties understand the legal and factual issues involved in this case.

Also, as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiff's TCPA claims and conducted written and oral discovery to identify the Settlement Class and prosecute the class claims. Through this discovery, Class Counsel learned information regarding

12

Defendants' policies and procedures with respect to the method of how calls are placed and how Defendants contend consent to make such calls is obtained. Class Counsel obtained comprehensive records of the calls in discovery, showing the dates of the calls, the telephone numbers dialed, as well as the name and address of the person called. Plaintiff's expert analyzed these records and identified the telephone numbers that were assigned to a cellular telephone service at the time of the calls by cross referencing the numbers against cellular number databases that determines the number was a cellular telephone at the time of the call. Plaintiff also deposed Defendants' Rule 30b(6) corporate designees, including flying to Canada for some of these depositions.

As a result, Class Counsel were well positioned to evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to settle it.

## C. The Settlement is Within the "Range of Reasonableness" for Preliminary Approval

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

### 1. The Settlement Provides Substantial Relief for Settlement Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

13

### a.    The Monetary Amount Offered in Settlement

The Settlement requires Defendants to pay $5,500,000 into the Settlement Fund. Out of this fund, all Settlement Class Members who make a valid claim will receive their *pro rata* share of cash payments. *Exhibit 1.* The Settlement Fund is non-reversionary, ensuring that nearly all monetary benefits will go to Settlement Class Members. The Settlement Fund created by the Settlement is comparable to or better than many similar TCPA settlements. Furthermore, the monetary amount achieved by the Settlement is an outstanding result for Settlement Class Members, particularly because TCPA damages are purely statutory damages, in that Settlement Class Members have hard-to-quantify out-of-pocket losses or other economic harm.

Class Counsel acknowledge that the $5,500,000 Fund does not constitute the full measure of statutory damages potentially available to the Settlement Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after extensive arm's-length negotiations presided by experienced mediators and former district judges. Further, the Settlement compares favorably to other TCPA class actions settlements. Courts have approved

other TCPA class action settlements involving similar putative classes that achieved much smaller *pro rata* monetary recoveries.[7]

Indeed, courts have found similar TCPA class action settlements to meet the standards for preliminary approval and, as well as final approval. *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015)[8] (entering final approval of settlement providing slightly less than 2.5 million accounts for $11,268,058); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member would be awarded $39.66) (Holderman, J.); and *Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant).

For all of the above reasons, the monetary amount recovered through the Settlement—on par with TCPA settlements found to be fair, adequate, and reasonable—is a great result for the Class.

### b.    The Strength of Plaintiff's Case

Plaintiff continues to believe that his claim against Defendants including that the class would eventually have been certified. Nevertheless, Plaintiff and the Settlement Class would face a number of difficult challenges if the litigation were to continue including lengthy appeals if this Court again denied class certification.

---

[7] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

[8] *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS, Final Judgment and Order of Dismissal, Dkt. No. 160 (S.D. Cal. Feb. 5, 2015).

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [Defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Despite these disagreements, the parties reached settlement after participating in robust mediations as set out above. The Settlement provides substantial relief to Settlement Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Settlement Class Members would face in litigation.

## 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive motion practice, including Plaintiff's third motion for class certification and trial on the remaining issues. Any judgment in favor of Settlement Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill.

2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. There is Currently No Opposition to the Settlement

All parties favor settlement. But because notice has not yet been sent to the Settlement Class, this factor cannot be fully evaluated prior to the final fairness hearing.

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiff strongly endorse this Settlement.[9] Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases)[10]; (2) Class Counsel litigated this case for several years, and in doing so, engaged in formal and informal discovery and exhaustively evaluated the claims[11]; and (3) the Settlement was reached at arm's length through negotiations between experienced counsel, after three robust mediation sessions before experienced mediators and former judges.[12] *See McKinnie v. JP Morgan American Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of preliminary approval.

---

[9] *Keogh Decl.* ¶ 11.
[10] *Keogh Decl..* ¶¶ 8-12,
[11] *Keogh Decl.* ¶ 3.
[12] *Id.* ¶ 3.

5. **The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval**

The Settlement was reached after over 4 years of litigation and just before the decision on the third motion for class certification. As noted above, discovery has been robust. At the time of the settlement, Class Counsel had the information necessary to confirm that the Settlement is fair, reasonable, and adequate.[13]

D. **Provisional Certification of the Settlement Class is Appropriate**

For settlement purposes, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class defined in the Agreement. Agreement §2.25. Provisional certification for settlement purposes permits notice of the proposed Settlement to issue to inform Settlement Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. Defendants have agreed to provisional certification of the Settlement Class, as defined in the Agreement, solely for purposes of this Settlement. For the reasons set forth below, provisional certification is appropriate under Federal Rule of Civil Procedure Rule 23.

1. **The Rule 23(a) Requirements are Satisfied**

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of 731,173 people throughout the United States who received an automated or prerecorded Day 2 or Day 6 message, and joinder of all such persons is impracticable. *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). The commonality requirement is satisfied because

---

[13] *Id.* ¶ 11-12.

there are many questions of law and fact common to the Settlement Class that center on Defendants' calls to the Settlement Class Members on their cell phones. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendants violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages."). The typicality requirement is satisfied because Plaintiff's TCPA claims, which are based on automated or prerecorded Day 2 or Day 6 calls to cell phones, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. The adequacy of representation requirement is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16. Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See id.*; *Keogh Decl.* ¶¶ 8-12, 13-23 and *Exhibit 3, Owens Decl.* ¶¶ 18-24.

### 2.     The Rule 23(b)(3) Manageability Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a significant aspect of the case and can be resolved for all Settlement Class Members in a single adjudication. Common issues predominate here because the claims of the Settlement

Class members arise from Defendants' alleged common practice of using a prerecorded voice to contact consumers on their cell phones without their consent after a pet adoption. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendants selected who was to receive the [ ] faxes").

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.") And, resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits, and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 U.S. Dist. LEXIS 41766, at *14 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'") For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### E. The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits 1, 3 and 5 to the Agreement, satisfy all of the criteria above. The Notice Plan provides for direct, individual notice via either email or mail. Agreement §10. The Claims Administrator will send a second email to those Settlement Class Members that received individual notice via email two weeks after the first email is sent. The Claims Administrator will send a final email notice to these Settlement Class Members one week prior to the Notice Deadline. The E-mail and Mail Notice shall direct recipients to the

Settlement Website. E-mail Notice shall include an active hyperlink to the Settlement Website. *Exhibit 1* at 10.2.

In addition, notice will be provided to Settlement Class Members online through the Settlement Website. *Id*.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiff as class representative; (3) appoint his attorneys Keogh Law, Ltd., and Scott Owens as Class Counsel; (4) approve the proposed Notice and Claims Program, to be administered by KCC; (5) direct that Notice be provided to the Settlement Class pursuant to the terms of the Agreement; (6) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Class; (7) set a deadline s after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the Settlement Class, or seek to intervene or submit a Claim; (8) schedule a hearing to consider final approval of the Settlement and set the following schedule as set forth in the draft Preliminary Approval Order attached as *Exhibit 4*, which provides the following schedule:

| | |
|---|---|
| _____<br><br>[45 days after the date of this Order] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| _____<br><br>[45 days after the date of this Order] | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Awards |

| _____ [105 days from the date of this Order] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
|---|---|
| _____ [105 days from the date of this Order] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____ [14 days prior to Final Approval Hearing] | Deadline for Parties to file the following: <br> (1) List of persons who made timely and proper requests for exclusion (under seal); <br> (2) Proof of Class Notice; and <br> (3) Motion and memorandum in support of final approval, including responses to any objections. |
| ____ [No earlier than 165 days from the entry of this Order] | Final Approval Hearing |

Dated: May 8, 2019

Respectfully Submitted,

By:   *s/ Keith J. Keogh*
KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258

Scott D. Owens, Esq. *Pro Hac Vice*
 3800 S. Ocean Dr., Suite 235
Hollywood, Florida 33019
Phone: 954-589-0588
Toll free: 844-SDO-LEGAL
Email: Scott@ScottDOwens.com

23

*Attorneys for Plaintiff and the Proposed Class*

24