**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER LEGG, individually ) | |
| and on behalf of all others similarly situated, ) | |
| ) | Case No. 1:14-cv-10043 |
| Plaintiff, ) | |
| ) | Judge Robert Gettleman |
| v. ) | |
| ) | Magistrate Judge Young B. Kim |
| PTZ INSURANCE AGENCY, LTD. ) | |
| an Illinois Corporation, and ) | |
| PETHEALTH, INC. ) | |
| a Delaware Corporation, ) | |
| ) | |
| Defendants. ) | |

**MOTION FOR AND MEMORANDUM IN SUPPORT OF
ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1
II. BACKGROUND AND SETTLEMENT ..............................................................................2
    A. Procedural Background ...........................................................................2
    B. Discovery ..................................................................................................3
    C. The Parties' Mediation ............................................................................3
    D. The Settlement .........................................................................................4
III. LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS .......................................5
IV. ARGUMENT .........................................................................................................................5
    A. The Court Should Calculate Fees as a Percentage of the Fund ..............5
    B. Counsel's Request Is Within the Market Rate.........................................7
    1. The Requested Fee Comports with the Contracts Between Plaintiff and Counsel..8
    2. The Requested Fee Reflects the Fees Awarded in Other Settlements. ...................8
    3. Other Factors Support the Requested Fee ..............................................................9
        *a.* Risk of Nonpayment .......................................................................9
        *c.* Stakes of the Case ........................................................................13
    C. The Requested Service Award for Mr. Legg Should Be Approved. ....13
V. CONCLUSION ....................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*
  No. 1:09-CV-1162, 2016 WL 6272094 (W.D. Mich. Mar. 1, 2016)......................................14
*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*
  743 F.3d 243 (7th Cir. 2014) ..............................................................................................5
*Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015).................................................15
*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................................5
*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ........................................................................14
*Craftwood Lumber Co. v. Interline Brands, Inc.*
  No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ........................................................6
*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994)............................................6, 10
*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996) ...............................................................7, 8
*Hageman v. AT & T Mobility* LLC
  No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015)...............................15
*Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) .....................................................................8
*Heekin v. Anthem, Inc.*
  No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ...................................................15
*Ikuseghan v. Multicare Health Sys.*
  No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016)...................................14
*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*
  792 F. Supp. 2d 1028 (N.D. Ill. 2011)....................................................................................11
*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ......6, 9, 12
*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*
  280 F.R.D. 364 (N.D. Ill. 2011) ...............................................................................................5
*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................13
*In re Synthroid Marketing Litig.*, 325 F.3d 974 (7th Cir. 2003).....................................................5
*In re Synthroid Mkt. Litig.* 264 F.3d 712 (7th Cir. 2001)............................................. 7, 8, 10, 14
*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*
  724 F. Supp. 160 (S.D.N.Y. 1989).............................................................................................6
*Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. 2013)...................................................11
*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986).........................................................................8, 9
*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015)...................................................6, 7, 9
*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*
  No. 08CV3610 CLW, 2015 WL 2383358 (D.N.J. May 18, 2015)........................................14
*Lees v. Anthem Ins. Companies Inc.*
  No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ................................14
*Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014)...............................................8
*Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) ...................................................9
*Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) .....................................................6
*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).................................................................7
*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*
  Case No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)............................................8


*Saf-T-Gard Int'l v. Vanguard Energy Servs.*
   No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ........................................................11
*Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) ........................................7, 9
*Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ................................................... 5, 9, 10, 12

Statutes
47 U.S.C. § 227.................................................................................................................................1

Case: 1:14-cv-10043 Document #: 464 Filed: 06/26/19 Page 4 of 20 PageID #:11216

## I.    INTRODUCTION

On May 15, 2019, this Court preliminarily approved a proposed class action settlement between Plaintiff Legg ("Plaintiff" or "Legg") and Defendants PTZ Insurance Agency, LTD ("PTZ") and Pethealth, Inc. ("Pethealth," jointly as "Defendants"). This Settlement creates a $5,500,000, non-reversionary common fund for the benefit of approximately 731,173 persons Defendants, or their subsidiaries, called using an artificial or prerecorded voice to play a "Day 2" or "Day 6" message, from October 16, 2013 through November 30, 2016 in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Class Counsel zealously prosecuted Plaintiff's claims for over four and half years, achieving the settlement only after extensive first and third-party discovery; contested motion practice, and years of arms-length negotiations that involved two mediations at JAMS.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $1,911,960 which represents 36% of the settlement fund net administration costs, plus $21,000.31 for counsel's out-of-pocket costs[1]. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million.)

This request should be approved because (1) it represents the market rate for this type of settlement and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for a service award of $20,000 to Plaintiff

---

[1] Expenses do not include any internal costs such as copying, legal research or telephone costs. *Keogh Decl.* at ¶ 14.

Legg for his work on behalf of the Class, which includes traveling from Florida to Chicago for his deposition, written discovery, and settlement efforts. Such an award is routine and proper.

## II. BACKGROUND AND SETTLEMENT

### A. Procedural Background

On December 15, 2014, Legg filed a Complaint alleging that PTZ and Pethealth violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by making prerecorded calls to cell phones without the prior express consent of Legg or the putative class members.

On September 16, 2015, Plaintiff filed his amended motion for Class Certification (Dkt 114), which was ultimately denied by this Court on September 21, 2016 after briefing. (Dkt. 223).

While class certification was pending, Pethealth filed a Motion for Summary Judgment on January 8, 2016. (Dkt. 128). On September 14, 2016, the Court denied Pethealth's Motion for Summary Judgment after full briefing (Dkt. 218).

On October 5, 2016, Plaintiff filed a Motion to Reconsider the Court's Order denying class certification (Dkt. 226). On November 21, 2016, the Court denied Plaintiff's Motion for Reconsideration and granted Plaintiff leave to file a Second Amended Complaint (Dkt. 235)

On December 12, 2016, Plaintiff filed his Second Amended Complaint (Dkt. 236.) On January 17, 2017, Defendants answered the Second Amended Complaint, and on January 18, 2017 filed a Motion to Strike the Class Allegations in the Second Amended Complaint (Dkt 247)

On February 10, 2017, Plaintiff filed his Second Amended Motion for Class Certification (Dkt. 252). After briefing, the Court denied Plaintiff's Motion for Class Certification and Granted Defendants' Motion to Strike Class Allegations on August 15, 2017 (Dkt. 287).

On August 31, 2017 Plaintiff filed a Rule 23f Petition for Permission to Appeal with the United States Court of Appeals for the Seventh Circuit (7th Cir. Case No. 17-8018). After briefing, the Court of Appeals denied Plaintiff's petition on October 10, 2017 (Dkt. 289).

On November 33, 3017, Defendant Fairfax Financial Holdings, LTD filed a motion to dismiss for lack of jurisdiction (Dkt. 293).

On December 22, 2017, Plaintiff filed a Motion for Summary Judgment (Dkt 304). After briefing, Plaintiff filed a Motion for leave to file a Third Amended Complaint and to withdraw this pending Motion for Summary Judgment (Dkt 406). On August 15, 2018, the Court Granted Plaintiff's Motion for Summary Judgment against PTZ (Dkt. # 408), Denied Plaintiff's Motion for Summary Judgment regarding Pethealth, and Granted Plaintiff leave to file a Third Amended Complaint and Third Amended Motion for Class Certification (Dkt 409).

On August 30, 2018, Plaintiff filed his Third Amended Motion for Class Certification. (Dkt 414). Settlement was reached between the parties after the Third Motion for Class Certification was briefed, but before the Court ruled on the Motion.

### B. Discovery

The Parties engaged in extensive discovery and conducted numerous hearings with the focus on discovery. *See* Dkt. Nos. 45, 51, 65, 78, 87, 88, 90, 101, 102, 103, 107, 108, 109, 110, 116, 117, 118, 119, 173, 181, 368, 403, and 436. In addition, Plaintiff filed motions to compel production of discovery against both Defendants (Dkt. Nos. 76, 162, 314, 322, and 416).

Throughout the discovery process, Counsel held numerous discovery conferences with counsel as well as with third party counsel. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and of Plaintiff's class TCPA claims. *See* Declarations of Keith J. Keogh ("*Keogh Decl.*") attached as *Exhibit 1*, ¶ 3.

### C. The Parties' Mediation

The parties mediated before the Honorable James Holderman (ret.) of JAMS on December 3, 2015, and again on July 18, 2016. The parties followed-up with in person meetings and

3

negotiations between Counsel before reaching a resolution in principle. Prior to each mediation, the parties submitted detailed mediation briefs setting forth their respective views on the case. *Id*. At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class. *Id*. Counsel exchanged counterproposals on key aspects of the Settlement. At all times, the settlement negotiations were non-collusive and arm's length. *Id* ¶ 9.

### D. The Settlement

The Settlement provides that Defendants will pay $5,500,000 into a common fund for the Settlement Class, which is defined as follows:

> All persons in the United Sates who were called on their cell phone using an artificial or prerecorded voice to play a "Day 2" or "Day 6" message, from October 16, 2013 through November 30, 2016.

*See* Agreement § 2.25.[2]

The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. Notice and administration costs through Kurtzman Carson Consultants LLC ("KCC") are projected at $189,000 assuming a 5% - 10% claim filing rate. Settlement Class Members who submit a valid Claim are expected to receive Settlement Awards of $92 assuming a 5% claim rate and $46 assuming a 10% claim rate. *Ex.* 1 at ¶ 8. This is a terrific outcome given that the non-fee-shifting TCPA generally provides for $500 in damages per violation. 47 U.S.C. § 227(b)(3). It is also a great outcome in light of the fact this Court twice denied class certification as well as the fact Defendants have consistently claimed inability to pay.

---

[2] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family and all persons who have opted-out of the Settlement Class. *Id.*

4

Plaintiff respectfully requests that the Court approve attorneys' fees of $1,911,960 which represents 36% of the settlement fund net expenses, plus $21,000.31 of counsel's out-of-pocket costs, and a $20,000 service award for Plaintiff Legg. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested service award is comparable to other TCPA cases.

### III. LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS

Courts have long recognized when counsel's efforts result in the creation of a common fund that benefits class members, counsel has a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

In common fund cases, courts have discretion to use: (1) percentage of the fund; or (2) lodestar. *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011); *see also Birchmeier supra* (affirming attorney fees in TCPA class action of 36% of the first $10 million.)

### IV. ARGUMENT

#### A. The Court Should Calculate Fees as a Percentage of the Fund

The Court should use the percentage of the fund approach to determine fees in this case. Courts look to *In re Synthroid Marketing Litig.* ("*Synthroid II*"), 325 F.3d 974, 980 (7th Cir. 2003), to assist in determining fees, and have nearly uniformly held that the percentage of the fund reflects

5

the "market rate" for consumer class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

One of the advantages that the percentage of the fund has over lodestar, and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015)(Discussing fee award in TCPA class action). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one seminal case found:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F.

6

Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

### B. Counsel's Request Is Within the Market Rate

The Court is also tasked with determining what percentage of the settlement fund is appropriately allocated as attorney's fees. The Seventh Circuit has held "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Further, the court held that there should be a "presumption" that fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). Although *Pearson* establishes that courts must also consider the value of the settlement exclusive of administrative costs, it does not purport to alter the "market rate" analysis or lower the market rate for attorneys' fees in consumer class actions.

Here, Plaintiff's request falls squarely within the *Pearson* presumption. Plaintiff respectfully requests that the Court approve $1,911,960 in attorney's fees, which is 36% of the Settlement Fund net administration costs. This is in line with the latest TCPA fee decision from the Seventh Circuit where it affirmed attorney fees in TCPA class action of 36% of the first $10 million. *Birchmeier supra* at 796-797.

The Seventh Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *In re Synthroid Mkt. Litig.* ("*Synthroid I*"), 264 F.3d 712, 719 (7th Cir. 2001)). Other factors are relevant, as well,

7

including the risk counsel undertook in accepting the case, the quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. Each of these factors supports the requested fee.

1. <u>The Requested Fee Comports with the Contracts Between Plaintiff and Counsel.</u>

The requested fee award is supported by the fee awards deemed reasonable in similar class cases and it is in line with representation agreements commonly entered into in this District, including the one in this case. In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005.

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiff's agreement with Counsel reflects this fee range, as is normal in consumer TCPA cases in this District. *See Ex. 1* at ¶ 4. Such evidence supports a finding the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

2. <u>The Requested Fee Reflects the Fees Awarded in Other Settlements.</u>

Awards of one-third of the entire settlement fund were commonplace in TCPA litigation before *Pearson*. *See Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87)

8

(awarding attorneys' fees of one-third of total settlement fund). The 36% fee, based on the fund net administration costs, represents the post-*Pearson* market price, and is therefore reasonable. Several courts have approved similar or greater fees in this District in TCPA cases since *Pearson* support this rate. *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of total fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.)(36% of the fund net admin costs). Once again, the Seventh Circuit in *Birchmeier* has confirmed this market rate when it affirmed the attorney fees of 36% of the first $10 million. *Birchmeier* at 896 F.3d at 796-797.

        3.        <u>Other Factors Support the Requested Fee.</u>

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel, and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

        *a.*        Risk of Nonpayment

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in

9

assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

Success, especially at the outset of this action, was by no means assured. The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.* Thus, because this case was filed on in May 2015, the Court must look at the risks associated with the case on that date.

Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size or ascertainability of the asserted class. Class Counsel accepted the case despite knowing that extensive class discovery would likely be required.

10

Moreover, even assuming sufficient discovery would be obtained, Class Counsel accepted the risk that the Court might ultimately deny certification again or grant certification along with summary judgment for Defendants. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized). In addition, it is not uncommon for Defendants to go out of business or declare bankruptcy as recently happened to another class action Class Counsel was litigating for years. *See Kinnamon v Ditech Financial, LLC.*, 16-646 JAR, ECF 211 (E.D. Mo. February 26, 2019)(staying case due to bankruptcy proceeding where class certification and summary judgment were fully briefed and awaiting ruling).

Class Counsel accepted that litigating these and other issues risked recovering nothing for the class, Plaintiff, or counsel, and would have required significant expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. S*ee In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class).

The risk was real as evidenced by what transpired in this case. One of the primary battles in every TCPA action involves class plaintiffs' attempts to determine the size and scope of the class. Those facts are not (and cannot be) known by plaintiff's counsel *ex ante*, and typically require contentious discovery and litigation before ever becoming known. This case is no different; the Parties engaged in extensive discovery and conducted numerous status conferences

11

with the focus on discovery. *See* Dkt. Nos. 45, 51, 65, 78, 87, 88, 90, 101, 102, 103, 107, 108, 109, 110, 116, 117, 118, 119, 173, 181, 368, 403, and 436. In addition, Plaintiff filed motions to compel production of discovery against both Defendants (Dkt. Nos. 76, 162, 314, 322, and 416).

Litigating these issues risked recovering nothing for the class, and required significant additional expenditure of time, money, and resources — for which Class Counsel would not be compensated should they lose on summary judgment or fail to certify a class.

In light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award is reasonable. *In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% in TCPA class settlement).

      *b.*  Quality of Performance and Work Invested

The quality of Class Counsel's performance and time invested in fighting through years of contested motion practice, substantial discovery, and adversarial negotiations to achieve a $5,500,000, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. Class Counsel successfully overcame numerous hurdles, from adversarial motion practice to contentious discovery requiring multiple motions to compel. *See* Dkt. Nos. 45, 51, 65, 78, 87, 88, 90, 101, 102, 103, 107, 108, 109, 110, 116, 117, 118, 119, 173, 181, 368, 403, and 436 (Status hearings on discovery) and motions to compel production of discovery against both Defendants (Dkt. Nos. 76, 162, 314, 322, and 416).

In addition to their substantial litigation efforts, Class Counsel devoted numerous hours to negotiating the settlement, as well, which included preparing their clients' mediation submissions, attending two separate mediation sessions, and months of continued negotiations including face to face meetings with Defendants' Counsel. (Keogh Decl. ¶ 3, 9).Class Counsel spent substantial time preparing the settlement papers and notice documents, working with the independent notice

12

provider, and drafting the motion for preliminary approval.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. (Keogh Decl. ¶¶ 23-52)(Owens Dec. ¶¶15-26) Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)). Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

        *c.*     Stakes of the Case

The stakes of the case further support the requested fee award. This case involves hundreds of thousands of Settlement Class Members who allegedly received unsolicited robocalls from Defendants. The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call), and thus individuals are unlikely to file individual lawsuits, especially as here each class member only received a small number – usually one or two– of these calls. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to when the class period begins, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

    **C.**    **The Requested Service Award for Mr. Legg Should Be Approved.**

Class Counsel also respectfully request that the Court grant a service award of $20,000 to Plaintiff Christopher Legg for his efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards

encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff answered discovery, was deposed in Chicago requiring travel from Florida, and fully participated in this litigation. Mr. Legg also worked with Class Counsel to investigate the case, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. (Keogh Decl. ¶ 5.)

Moreover, the amount requested here, $20,000, is comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 1:09-CV-1162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (approving a $10,000 service award where Plaintiff was deposed, reviewed documents, and assisted counsel); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman v. AT & T Mobility* LLC, No.

CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement). The requested service award of $20,000 for Plaintiff is reasonable and should be approved.

### V.      CONCLUSION

WHEREFORE, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $1,911,960 which represents 36% of the settlement fund net administration costs, plus $21,000.31 of counsel's out-of-pocket costs. Class Counsel further requests that the Court approve a service award to Plaintiff Legg in the amount of $20,000.

Dated: June 26, 2019

                                    Respectfully Submitted,

By:  *s/ Keith J. Keogh*
KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258

Scott D. Owens, Esq. *Pro Hac Vice*
3800 S. Ocean Dr., Suite 235
Hollywood, Florida 33019

15

Phone: 954-589-0588
Toll free: 844-SDO-LEGAL
Email: Scott@ScottDOwens.com

*Attorneys for Plaintiff and the Proposed Class*