**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER LEGG, individually | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | Case No. 1:14-cv-10043 |
| Plaintiff, | ) | |
| | ) | Judge Robert Gettleman |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| PTZ INSURANCE AGENCY, LTD. | ) | |
| an Illinois Corporation, and | ) | |
| PETHEALTH, INC. | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER LEGG'S MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND MEMORANDUM**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      INTRODUCTION ....................................................................................1

II.     STATEMENT OF THE FACTS .................................................................3

     A.     Procedural Background ....................................................................3

     B.     Discovery ........................................................................................4

     C.     The Parties' Mediation ...................................................................5

     D.     The Proposed Settlement ................................................................5

           1.     The Settlement Class...........................................................5

           2.     Monetary Relief for Settlement Class Members .........................6

           3.     *Cy Pres* Distributions ..........................................................7

           4.     Settlement Class Release.......................................................8

           5.     Class Representative Service Award ...........................................9

           6.     Attorneys' Fees and Costs.....................................................9

           7.     Administration and Notice .......................................................11

III.    ARGUMENT...........................................................................................12

     A.     The Settlement Approval Process .......................................................12

     B.     The Settlement is Fair, Reasonable, Adequate, and Should be
           Approved                                       13

           1.     The Monetary Amount Offered in Settlement.............................14

           2.     The Strength of Plaintiff's Case .................................................16

           3.     Continued Litigation is Likely to be Complex, Lengthy,
                and Expensive  18

           4.     The Class Response Is Positive .................................................18

            5.     Class Counsel Strongly Endorse the Settlement.........................20

IV.    CONCLUSION.......................................................................................22

## Cases

*Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012) .....15

*Agne v. Papa John's International Inc. et al,* 2:10-cv-01139 (D. Wa.) .........................................6

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
(N.D. Ill. May 5, 2011).................................................................................................16, 17

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ................................................................................. 12, 14, 15

*Bayat v. Bank of the West*
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) .....................................6

*Birchmeier v. Caribbean Cruise Line, Inc.,* 896 F.3d 792 (7th Cir. 2018) ...................................10

*Boeing Co. v. Van Gemert, 444 U.S. 472,* 478 (1980)................................................................19, 20

*Boggess v. Hogan,* 410 F. Supp. 433, 438 (N.D. Ill. 1975).........................................................12

*Felzen v. Andreas,*
134 F.3d 873 (7th Cir. 1998) ..........................................................................................12

*Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.,* 06-cv-05849-PSG-PLA
(C.D. Ca. 2009).................................................................................................................9

*Goldsmith v. Technology Solutions Co.*
No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995)................................12

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010).......................................................................................14

*In re Capital One TCPA Litigation,* 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) ....15

*In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master
Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016)............................................8

*In re Mexico Money Transfer Litig.,*
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...............................................................................20

*In re Southwest Airlines Voucher Litig.,*
No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013)...............................18

*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013)....................................7

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ................................................................................. 12, 14, 18

*Johnson v. Yahoo! Inc.*
No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) ............................17

*Kramer v. Autobytel,*
No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
(N.D. Cal. Jan. 27, 2012).................................................................................................15

*Legg v AEO*, 14-cv-02440-VEC (S.D. NY 2017).......................................................................7

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
(S.D. Cal. Feb. 5, 2013)..................................................................................15

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009) ..............................................................20

*Nicholson v Hooters of Augusta, Inc.*
95-RCCV- 616 (Richmond County, Ga. April 25, 2001) ........................................9

*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* 1:13-cv-06897 (N.D. Ill.).......6, 19

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,* 1:13-cv-03105
(N.D. Ill.) ..................................................................................................6, 19

*Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011)..........................15

*Phillips Randolph Enters., LLC v. Rice Fields*,
No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
(N.D. Ill. Jan. 11, 2007)..............................................................................16, 17

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................18

*Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23,
2013)........................................................................................................6, 19

*Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) ........................................................15

*Synfuel Techs, Inc. v. DHL Express (USA), Inc*.,
463 F.3d 646 (7th Cir. 2006) ...........................................................................14

*Willett, et al. v. Redflex Traffic Systems, Inc., et al.*
Case No. 13-cv-01241-JCH-RHS (D.NM 10/24/16)..............................................8

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) ....................6, 19

**Treatises**

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002)...........................................11, 12

*Manual for Complex Litig.,*
at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004) .......................................12

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.    <u>INTRODUCTION</u>

Plaintiff Christopher Legg respectfully moves the Court for final approval of the nationwide class action settlement ("Settlement") reached between Plaintiff Legg ("Plaintiff" or "Legg") and Defendants PTZ Insurance Agency, LTD ("PTZ") and Pethealth, Inc. ("Pethealth," jointly as "Defendants").  *See Exhibit 1*.  This Settlement creates a $5,500,000, non-reversionary common fund for the benefit of the class of persons called using an artificial or prerecorded voice to play a "Day 2" or "Day 6" message, from October 16, 2013 through November 30, 2016 in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Under the Settlement Defendants are required to pay $5,500,000 into a settlement fund ("Fund") for a class consisting of approximately 731,173 persons for whom Defendants or their subsidiary called on their cell phone using an artificial or prerecorded voice to play a "Day 2" or "Day 6" message, from October 16, 2013 through November 30, 2016.  Settlement Class Members who file valid claims will receive a pro rata cash payment from this Fund.  Not a single penny of the Fund will revert to Defendants.

This action involves sharply opposing positions on many issues and was resolved only after years of litigation, including two prior denials of class certification and while the third motion for class certification was pending.

On May 15, 2019, the Court granted preliminary approval of the Settlement (Dkt. 462). Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated via e-mail to 741,584 Class Members (some class members had multiple e-mails so notice was sent to all known e-mails) and disseminated vial mail to 15,497 class members for whom Defendants did not have an e-mail address.  *See Exhibit 2* Declaration of Scott DiCarlo re:

1

Notice Procedures, ¶¶ 3-4 ("DiCarlo Decl."). KCC then mailed an additional 113,793 Postcard Notices for the e-mails that bounced back. *Id.* at ¶5. KCC then searched for updated addresses for any returned mail and mailed an additional 8,477 notices for those whose address KCC was able to locate.

On August 7, 2019, an email reminder notice was sent to 625,307 class members whose e-mail was not bounced back and had yet to submit a claim. *Id.* at ¶7. The notices specifically advised the claimants the exact amount of attorney fees both as a percentage of the fund and total dollar amount, as well as the dollar amount Plaintiff would be seeking for an incentive award.

A state-of-the-art, user-friendly claims process allowed Class members to file claims through a simple claim form, an internet website, or a toll-free phone number. To date, over 10,137 claims[1] were filed with 332 of them being filed late. *Id.* at ¶ 10

There are no objections to any portion of the settlement and no persons have timely asked to be excluded. *Id.* at ¶ 12.

Class Counsel calculates that each of the claims will be paid $331, which is more than the $92-$46 estimated range in the class notice. This amount is based on the pro rata share after administration costs of $189,514, the requested attorney fee set out in the notice of $1,911,960[2], the requested reimbursement of $21,000.31 in hard costs, and the requested incentive award of $20,000[3].

---

[1] Some of the names on the claims do not match the names in the class list. KCC will follow up with these persons to request additional information to insure they are class members. If any of these claims are determined not to be class members, the amount per valid claim will increase pro rata.

[2] *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million.)

[3] *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. 93 at 6) (Approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs.,*

## II.    STATEMENT OF THE FACTS

### A.    Procedural Background

Almost five years ago on December 15, 2014, Legg filed his complaint alleging that PTZ and Pethealth violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by making prerecorded calls to cell phones without the prior express consent of Legg or the putative class members.  This case was hard fought and heavily litigated as set out below.

On September 16, 2015, Plaintiff filed his amended motion for Class Certification under seal. (Dkt. 114), which was ultimately denied by this Court on September 21, 2016 after briefing. (Dkt. 223).

While class certification was pending, Pethealth filed a Motion for Summary Judgment on January 8, 2016.  (Dkt. 128). On September 14, 2016, the Court denied Pethealth's Motion for Summary Judgment after full briefing (Dkt. 218).

On October 5, 2016, Plaintiff filed a Motion to Reconsider the Court's Order denying class certification (Dkt. 226). On November 21, 2016, the Court denied Plaintiff's Motion for Reconsideration and granted Plaintiff leave to file a Second Amended Complaint (Dkt. 235).

On December 12, 2016, Plaintiff filed his Second Amended Complaint (Dkt. 236). On January 17, 2017, Defendants answered the Second Amended Complaint, and on January 18, 2017 filed a Motion to Strike the Class Allegations in the Second Amended Complaint (Dkt 247).

On February 10, 2017, Plaintiff filed his Second Amended Motion for Class Certification (Dkt. 252). After briefing, the Court denied Plaintiff's Motion for Class Certification and Granted Defendants' Motion to Strike Class Allegations on August 15, 2017 (Dkt. 287).

*Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement);

On August 31, 2017 Plaintiff filed a Rule 23f Petition for Permission to Appeal with the United States Court of Appeals for the Seventh Circuit (7th Cir. Case No. 17-8018). After briefing, the Court of Appeals denied Plaintiff's petition on October 10, 2017 (Dkt. 289).

On November 33, 3017, Defendant Fairfax Financial Holdings, LTD filed a motion to dismiss for lack of jurisdiction (Dkt. 293).

On December 22, 2017, Plaintiff filed a Motion for Summary Judgment (Dkt. 304). After briefing and extensive motion practice relating to discovery, Plaintiff filed a Motion for leave to file a Third Amended Complaint and to withdraw this pending Motion for Summary Judgment on August 7, 2018 (Dkt. 406). On August 15, 2018, the Court Granted Plaintiff's Motion for Summary Judgment against Defendant PTZ, Denied Plaintiff's Motion for Summary Judgment regarding Pethealth, and Granted Plaintiff leave to file a Third Amended Complaint and Third Amended Motion for Class Certification (Dkt 409).

On August 30, 2018, Plaintiff filed his Third Amended Motion for Class Certification. (Dkt. 414). Settlement was reached between the parties after the Third Motion for Class Certification was briefed, but before the Court could rule on the Motion.

### B.   Discovery

The Parties engaged in extensive discovery and conducted numerous hearings with the focus on discovery. *See* Dkt. Nos. 45, 51, 65, 78, 87, 88, 90, 101, 102, 103, 107, 108, 109, 110, 116, 117, 118, 119, 173, 181, 368, 403, and 436. In addition, Plaintiff filed motions to compel production of discovery against both Defendants (Dkt. Nos. 76, 162, 314, 322, and 416).

Throughout the discovery process, Counsel held numerous discovery conferences with counsel related to discovery and other issues, as well as with third party counsels. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of

4

discovery as well as their respective views on class certification and of Plaintiff's class TCPA claims.[4]

### C. The Parties' Mediation

The parties mediated before the Honorable James Holderman ("Judge Holderman") of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on December 3, 2015, and again on July 18, 2016, as well as follow-up in person meetings and negotiations between Counsel and officers of Defendants before reaching a resolution in principle. Prior to each mediation, the parties submitted detailed mediation briefs to the mediator setting forth their respective views on the strengths of their cases.[5] At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[6]

Counsel exchanged counterproposals on key aspects of the Settlement. At all times, the settlement negotiations were adversarial, non-collusive, and at arm's length.[7]

### D. The Proposed Settlement

The Settlement's details are contained in the Agreement signed by the parties. *Exhibit 1*. For purposes of final approval, the following summarizes the Agreement's terms:

#### 1. The Settlement Class

The Settlement Class is defined as follows:

All persons in the United Sates who were called on their cell phone using an artificial or prerecorded voice to play a "Day 2" or "Day 6" message, from October 16, 2013 through November 30, 2016.

---

[4] *See* Declarations of Keith J. Keogh ("*Keogh Decl.*") attached as Exhibit 3, ¶ 3.
[5] *Id.*
[6] *Id.*
[7] *Id.*

5

Agreement § 2.25.[8]  Based on Plaintiff's expert's analysis, the approximate class size is no more than 731,173 persons.  *Exhibit 3* Keogh Decl., ¶ 7.

### 2.  Monetary Relief for Settlement Class Members

The Settlement requires Defendants to create a non-reversionary Settlement Fund of $5,500,000.  Agreement §2.30.  Out of this Fund, Settlement Class Members who file a valid claim will receive a Settlement Award in the form of a cash payment.  *Id.* § 2.28.  In order to exercise the right to obtain the relief outlined above, Settlement Class Members could have made a claim via the Settlement Website, by mail or via the Toll-Free Settlement Hotline.  Id. §10.2.

The amount of each Settlement Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims.  *Id.* §§ 11.  No amount of the Settlement Fund will revert to Defendants.  *Id.*  Class counsel previously estimated that valid claimants would receive $92 based on their experience in similar TCPA class actions.  As noted above, the actual amount would be $331 after deductions for Court-approved attorneys' fees and costs, any Court-approved incentive award to the Plaintiff, and costs of notice and claims administration, should the court approve those requests.  While the claim rate of 1.38%[9] is less than initially expected, the value per claimant has improved.

---

[8] Excluded the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of this Agreement.  *Id.*

[9] Claims rates in TCPA class actions are often around or below 2%.  *See Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.,* 1:12-cv-00780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,* 1:13-cv-03105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* 1:13-cv-06897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's International Inc. et al,* 2:10-cv-01139 (D. Wa.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC et al,* 10-cv-0349 (M.D. La.) (.07% of the class made claims); *Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action

Checks for Cash Awards will be valid for 90 days from the date of the check. *Id.* § 12.1. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least ten dollars ($10.00) to each Settlement Class Member who was not a person who failed to cash his or her initial Settlement Award check, such remaining monies will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* §12.2.

### 3.  *Cy Pres* Distributions

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. Subject to Court approval, the Plaintiff suggested in his motion for preliminary approval any such funds be sent to the National Consumer Law Center earmarked for working to safeguard the protections of the TCPA. *Id.* §12.3. The class notice identified this organization and no class member objected.

The Seventh Circuit requires that any potential cy pres be closely aligned with the Class' interest. For instance, in *Ira Holtzman, C.P.A., & Assocs. v. Turza*, it rejected the Legal Assistance Foundation of Metropolitan Chicago, which it acknowledged a worthy organization, as a cy pres recipient in a TCPA case because it was not closely related to the class interests in a TCPA class action. *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) ("Money not claimed by class members should be used for the class's benefit to the extent that is feasible.") As such, courts have determined that cy pres awards to NCLC are appropriate in TCPA actions where funds are earmarked for TCPA purposes, as they are here. *See Legg v AEO*, 14-cv-02440-VEC (S.D. NY 2017)(TCPA)(Approving NCLC for TCPA class case);

---

settlement with 2.5% claims rate); *DeLos Santos v Millward Brown*, 9:13-CV-80670-KAM, Dkt. 84 (S.D Fl. 2015) (approving TCPA class action settlement with 1.59% claims rate); *Martin v GTL*, 15-cv-03464-ODW-PLA (C.D. Ca. 2015)( (approving TCPA class action settlement with 1.8% claims rate).

*Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS (D.NM 10/24/16)(TCPA)(Same); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016)(Same). In fact, one would be hard pressed to find another organization so closely aligned to the class interests to be protected by the TCPA[10].

### 4.    Settlement Class Release

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "that were asserted or could have been asserted in the Complaint filed in this action on behalf of Plaintiff and the Settlement Class, including claims for alleged violations of the TCPA, any other federal, law, state law, common law, contract, rule or regulation, or any claim for equitable or injunctive relief whether known or unknown, foreseen or unforeseen, actual or contingent, that arise out of or related to the Day 2 and/or Day 6 Reminder Calls placed between October 16, 2013 to the Present except any release will not cover any dispute or claim relating to any insurance product obtained or purchased" *Id.* § 17.2.

---

[10] NCLC has commented to the FCC on almost every major, and many minor, proceedings, rulemakings and requests for exemptions under the TCPA that have come up since late 2014 with the FCC. *See Exhibit 4* (letter from NCLC).  It is widely seen as the leading consumer voice and the expert on TCPA matters pending before both the FCC and Congress. *Id.*  NCLC staff meet regularly, almost bi-monthly, with staff of the former and current FCC Chairman's office, as well as staff of other Commissioners' office, and staff of the Consumer and Governmental Affairs Bureau.  *Id.*  Many of these filings are simple ex partes meeting summaries, but many single filings also reflect multiple meetings held on one day.

In addition, NCLC wrote the amicus to the DC Circuit Court on behalf on behalf of several of the national consumer groups defending the 2015 Omnibus Order (which NCLC was largely instrumental in effecting -- as can be seen from a search of that order for either NCLC staff member Margot Saunders or NCLC's name.  *Id.*  NCLC staff has also testified in the Senate defending the TCPA last time the issue was before it.  *Id.*

### 5.    Class Representative Service Award

The Settlement Agreement provides Plaintiff may petition the Court for a service award. There is no clear sailing provision as to this request.  The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement.  *Id.*  In light of the fact that Plaintiff has fully participated in this case for almost five years, including flying to Chicago from Florida for his deposition, Plaintiff has petitioned the Court for an incentive award of $20,000.00 (Dkt. 464).

The amount requested here, $20,000, is comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. 93 at 6) (Approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.*, 06-cv-05849-PSG-PLA Document 212 (C.D. Ca. 2009) ($15,000 to the named plaintiff for service payment in TCPA class settlement); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV- 616 (Richmond County, Ga. April 25, 2001) ($15,000 to the named plaintiff in a TCPA class action for service payment).

The Class Notice advised the Settlement Class of Plaintiff's request and specified the dollar amount in two separate sections to insure all class members would notice the request.  No class members objected.

### 6.    Attorneys' Fees and Costs

Class Counsel has petitioned the Court for an award of attorneys' fees and costs in the amounts of $1,911,960 and 21,000.31 respectfully (Dkt. 464).  As addressed in Class Counsel's petition, the Seventh Circuit has explicitly approved fees in the amount of 36% of the fund (after

the costs of notice and administration are deducted) in common fund TCPA class settlements, particularly in cases involving a non-reversionary common fund of this size. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel for the years of work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *Id*.

Once again, the Class Notice provided the fees sought both as a percentage and specific dollar amount to avoid ambiguity. Specifically the notice provided:

> Class Counsel will ask the Court to approve payment of up to **thirty-six percent** of the Settlement Fund after administration costs are deducted, which would equal **$1,911,960**, for attorneys' fees plus reasonable expenses. Class Counsel also will ask the Court to approve payment of **$20,000 to Plaintiff** for his services over the last five years as Class

*See Exhibit 2 at Ex. A*. (Emphasis Added). The Settlement Website also posted Plaintiff's petition for incentive award and attorney fees, including all exhibits thereto. *See* http://www.ptztcpasettlement.com/case-documents.aspx *(*Last visited October 10, 2019).

Once again, no class members objected to the fees or expenses sought.

Finally as with the incentive award to the class, the Settlement Agreement does not contain a clear sailing agreement as to attorney fees or costs.

### 7. Administration and Notice

All costs of notice and claims administration have been advanced by Defendants, credited against the Settlement Fund. The Court approved Kurtzman Carson Consultants ("KCC") as the Claims Administrator (Dkt. 462).

Pursuant to the Preliminary Approval Order, KCC issued the Class Notice (Exhibit 2 to the Agreement) via e-mail to 741,584 Class Members (some class members had multiple e-mails so notice was sent to all known e-mails) and disseminated vial mail to 15,497 class members for whom Defendants did not have an e-mail address. *See Exhibit 2* DiCarlo Dec ¶¶ 3-4. KCC then mailed an additional 113,793 Postcard Notices for the e-mails that bounced back. *Id.* KCC then searched for updated addresses for any returned mail and mailed an additional 8,477 notices for those whose address KCC was able to locate.

On August 7, 2019, an email reminder notice was sent to 625,307 class members whose e-mail was not bounced back and had yet to submit a claim. *Id.* at ¶ 7.

As set forth above, the notices specifically advised the claimants the exact amount of attorney fees both as a percentage of the fund and total dollar amount, as well as the dollar amount Plaintiff would be seeking for an incentive award.

KCC also established and maintained a Settlement Website: www.PTZTCPASETTLEMENT.com . The Settlement Website provided for online submission of claims and general information such as the Settlement Agreement; Website Notice; the Preliminary Approval Order; Motion for Attorney Fees and Incentive Award; the operative complaint, and Claim Form for anyone wanting to print a hard copy of and mail. *Id.*

### III.     <u>ARGUMENT</u>

#### A.     <u>The Settlement Approval Process</u>

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive

expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

The first two steps in this process have occurred. With this motion, Plaintiff respectfully requests that the Court take the third and final step in granting final approval.

**B.      The Settlement is Fair, Reasonable, Adequate, and Should be Approved**

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement is ultimately fair, reasonable and adequate at the final approval stage, courts in this Circuit consider the following factors:

(1) the strength of plaintiff's case compared to the terms of the proposed settlement;

(2) the likely complexity, length, and expense of continued litigation;

(3) the amount of opposition to settlement among affected parties;

(4) the opinion of competent counsel; and

(5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Isby*, 75 F.3d at 1199. In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Armstrong*, 616 F.2d at 315).

### 1.    The Monetary Amount Offered in Settlement

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

The Settlement requires Defendants to pay $5,500,000 into the Settlement Fund. Out of this fund, all Settlement Class Members who make a valid claim will receive their *pro rata* share of cash payments. *Exhibit 1.* The Settlement Fund is non-reversionary, ensuring that nearly all monetary benefits will go to Settlement Class Members. The Settlement Fund created by the Settlement is comparable to or better than many similar TCPA settlements. Furthermore, the monetary amount achieved by the Settlement is an outstanding result for Settlement Class

14

Members, particularly because TCPA damages are purely statutory damages, in that Settlement Class Members have hard-to-quantify out-of-pocket losses or other economic harm.

The gross amount of this settlement in relation to number of class members exceeds similar TCPA class action settlements that courts have approved.[11] Likewise the $331 amount per claim also exceeds the amounts per claim in many other TCPA settlements. *See e.g., In re Capital One TCPA Litigation,* 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each claimant would be awarded $39.66) (Holderman, J.) and *Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant.)

Class Counsel acknowledge that the $5,500,000 Fund does not constitute the full measure of statutory damages potentially available to the Settlement Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after this Court twice denied class certification. The settlement takes into account consideration the risks involved in betting on the third motion for class certification and inevitable appeals and was

---

[11] *See Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

only agreed to after extensive arm's-length negotiations presided by an experienced mediator and former district court judge.

Moreover, the Agreement provides the Settlement Class Members with substantial monetary relief, despite the fact that this is a purely statutory damages case in which Class Members incurred small economic damages or whose actual damages (such as to the invasion of their privacy) are difficult or impossible to quantify. For all of the above reasons, the monetary amount recovered through the Settlement is a great result for the class.

### 2. <u>The Strength of Plaintiff's Case</u>

Plaintiff continues to believe that his claim against Defendants including that the class would eventually have been certified. Nevertheless, Plaintiff and the Settlement Class would face a number of difficult challenges if the litigation were to continue including lengthy appeals if this Court again denied class certification.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [Defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

16

It should go without saying the parties disagree whether the Third Motion for Class Certification would have been granted. Yet even if the Court certified the class, there is a risk that the Court would decertify it. This is not a hypothetical risk as it has happened to Class Counsel in *Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564, at *2 (N.D. Ill. Feb. 13, 2018) where that court decertified a TCPA class after notice was sent to over 360,000 class members where plaintiffs' counsels are responsible for the notice costs. Along that line, it remains unknown what the Seventh Circuit would hold in light of Defendants' arguments that Plaintiff could not move to certify a class after obtaining summary judgment.

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Given these significant hurdles as compared against the settlement amount and comparable TCPA settlements described above that were granted final approval, this factor weighs in favor of final approval.

17

**3.    Continued Litigation is Likely to be Complex, Lengthy, and Expensive**

Litigation would be lengthy and expensive if this action were to proceed.  Although the parties engaged in significant discovery efforts, continued litigation would involve extensive motion practice, including Plaintiff's third motion for class certification and trial on the remaining issues.   Any judgment in favor of Settlement Class Members could be further delayed by the appeal process.   Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief.  *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

This factor weighs in favor of final approval.

**4.    The Class Response Is Positive**

The Settlement Class Members' response to the Settlement has been positive.  There are no objections[12] and no one excluded themselves.   This factor therefore favors final approval. *See, e.g., Isby* 75 F.3d at 1200 (affirming final approval of settlement where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig*., No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

---

[12] Mr. Dean submitted a letter asserting there was no claim form available at the Settlement Website, but his letter asserted he was using the wrong URL PTZTCPSettlement.com, which is missing the A for TCPA.  Dkt. 465.  In any event, when Class Counsel contacted Mr. Dean to advise him that the claim form was on the settlement website and could be submitted on-line, via 900 or mailed in, he advised that he already submitted a claim via phone. See e-mail attached as Exhibit 5.  As explained in the e-mail, the website did have links to submit claims, but additional links were added as well.  *Id.*

As noted above, Class Counsel anticipated a higher claim rate, but believes based on the robust notice plan and ease to submit a claim, the claim rate was impacted by the length of time between notice and the class members' interactions with Defendants. *Exhibit 3* Keogh Dec. at 8. Here a good portion of the class members claims arose in 2012 and 2013 such that it's been 7 years from when they received the robocalls and the notice. Similarly, many class members may not recognize Defendants' names as they interacted with the shelters and only one of the Defendant's name was mentioned relating to the microchip. *Id.*

Although the claim rate is within the range of settlements previously approved[13], Class Counsel submits the above to explain factors that may have impacted the claim rate to explain the deviation from counsel's estimated claim rate.

As the Supreme Court in *Boeing Co. v. Van Gemert*, *444 U.S. 472*, 478 (1980) explained, the claim rate does not impact whether the settlement is fair. Although *Boeing* dealt with whether attorney fees should be calculated based the entire revisionary amount or just the amount collected[14], *Boeing*'s holding explains the benefit of the settlement even where here was a low claim rate. The Court specifically held:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have

---

[13] *See Wood Dale Chiropractic, Ltd., supra* (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, supra* (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd.* (.53% of the class made claims); *Agne, supra* (1.52% of the class made claims); *Spillman, supra* (.07% of the class made claims); *Bayat supra* (claims rate of 1.9%); *DeLos Santos supra* (1.59% claims rate); *Martin supra* (approving 1.8% claims rate).

[14] That issue is not present here as this settlement is a common fund and non-reversionary settlement where unlike *Boeing,* no money is going back to the Defendants in this case.

been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting.

*Id.* at 481. This factor therefore favors settlement approval especially where, as here the class notice was robust, and the claim process allowed multiple convenient channels to submit a claim.

### 5.     Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiff strongly endorse this Settlement.[15] Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases)[16]; (2) Class Counsel litigated this case for several years, and in doing so, engaged in formal and informal discovery and exhaustively evaluated the claims[17]; and (3) the Settlement was reached at arm's length through negotiations between experienced counsel, after robust mediation sessions before Judge Holderman (Ret.) who is an experienced mediator.[18] *See McKinnie v. JP Morgan American Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of final approval.

---

[15] *See* Dkt. 352, *Keogh Decl.* ¶ 13
[16] *Keogh Decl.* ¶¶ 15-26.
[17] *Keogh Decl.* ¶¶ 2-5.
[18] *Id.* ¶¶ 3.

20

**6. The Stage of the Proceedings and the Amount of Discovery Completed Supports Final Approval**

The Settlement was reached after over 4 years of hard fought litigation and just before the decision on the third motion for class certification.

Similarly, discovery has been contentious and robust. The Parties engaged in extensive discovery and conducted numerous hearings with the focus on discovery. *See* Dkt. Nos. 45, 51, 65, 78, 87, 88, 90, 101, 102, 103, 107, 108, 109, 110, 116, 117, 118, 119, 173, 181, 368, 403, and 436. In addition, Plaintiff filed motions to compel production of discovery against both Defendants (Dkt. Nos. 76, 162, 314, 322, and 416) *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132.

At the time of settlement discovery was closed, Class Counsel had obtained call records showing the dates of the calls, the telephone numbers dialed, as well as the name and address of the person called. Plaintiff's expert analyzed these records and identified the unique telephone numbers that were assigned to cellular telephone service at the time of the survey calls by cross referencing the numbers against cellular number databases that determines the number was a cellular telephone at the time of the call. Plaintiff conducted numerous depositions including depositions in Canada.

As such, Class Counsel had the information necessary to confirm that the Settlement is fair, reasonable, and adequate.[19] Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through the exchange of both informal and formal discovery and participated in lengthy arm's length negotiations. This factor also weighs in favor of the final approval.

---

[19] *See* Dkt. 352, *Keogh Decl.* ¶ 13.

21

## IV.    CONCLUSION

This Settlement provides substantial benefits for all Settlement Class Members, it was negotiated at arm's length by experienced counsel after separate mediations, extensive discovery and litigation, it easily falls within the range of possible approval, and there are no objections to the terms of the settlement.  Thus, the Settlement is fair, reasonable and adequate, and Plaintiff respectfully requests that this Court enter an order granting final approval.  The draft order for Final Approval attached to the Settlement Agreement is attached hereto as *Exhibit 6.*


Dated: October 11, 2019


                                    Respectfully Submitted,

                                    By:   *s/ Keith J. Keogh*
                                    KEOGH LAW, LTD.
                                    Keith Keogh
                                    Email: keith@keoghlaw.com
                                    Timothy Sostrin
                                    Email: Tsostrin@Keoghlaw.com
                                    55 W. Monroe, Ste. 3390
                                    Chicago, IL 60603
                                    Phone: 312-265-3258

                                    Scott D. Owens, Esq. *Pro Hac Vice*
                                     3800 S. Ocean Dr., Suite 235
                                    Hollywood, Florida 33019
                                    Phone: 954-589-0588
                                    Toll free: 844-SDO-LEGAL
                                    Email: Scott@ScottDOwens.com

                                    *Attorneys for Plaintiff and the Proposed Class*